## MARY B. GABRIEL

*v.*

## FRANCIS CARL GABRIEL.

[Decided April 4th, 1916.]

1. Under the statute delaying for six months the final decree of divorce upon decree *nisi*, defendant in a divorce suit, who believes he has a defence, cannot delay presenting it until the case against him has been first presented before a master and decree *nisi* entered thereon, and then open such decree by setting up his claim of defence, or let final decree be taken, at his option.

2. In an ordinary civil case, an interlocutory decree, regularly obtained, after defendant's failure to put in defence, and after giving additional time therefor, will not be opened except upon proof of surprise or mistake, as well as merits.

3. On application to open a decree *nisi* of divorce, regularly obtained after defendant's failure to put in defence, defendant has no right beyond a decision of his application on the affidavits presented on both sides.

4. On application of defendant to open decree *nisi* of divorce, evidence, as presented by the record and affidavits, *Held* to confirm the charge of desertion in the petition established by the proofs before the master and his report thereon.

5. Where there is no question of any collusion or imposition on the court, or any other reason why the court, in its control over divorce, should in the public interest direct or allow inquiry or proofs as to the defence, defendant's application to open a decree *nisi*, entered after his failure to defend, will be denied.

On petition for divorce. On application to open decree *nisi.*
Heard on petition and affidavits.

*Mr. Sidney W. Eldridge,* for the defendant.

*Mr. Samuel Schleimer,* for the petitioner.

EMERY, V. C.

The application to open the decree *nisi* will be denied. The
main object of the provision of the statute, delaying for six
months final decree upon decree *nisi,* was to afford some opportu-
nity for protection of the court and the state against decrees
which were collusive or fraudulent decrees. It was not intended
by this provision for the two decrees to give a defendant who
really believed he had a defence the advantage of delaying it
until the case against him had been first presented before a
master and decree *nisi* thereon, and then give an opportunity
for making the entry of the final decree on the decree *nisi* a
matter of option with defendant, by allowing him, after decree
*nisi,* either to apply to open it on setting up his claim of defence,
or to let final decree be taken if he chose. Such a course of prac-
tice, under the Divorce act, would give the defendant not only
an undue advantage in reference to making his defence, but also
such an option of interposing his defence or not, after decree
*nisi,* as might be most unconscionably used.

There can be no suspicion in this case of any collusion between
the parties. The decree *nisi* has been regularly obtained after
defendant's failure to put in a defence, and after additional time
was given to put in defence, and upon sufficient proof before the
master of defendant's desertion. In an ordinary civil case such
decree would not be opened except upon proof of surprise or mis-
take as well as merits. Here the failure to put in a defence was
deliberate, and for financial inability, defendant says, but, if
necessary, it might have been put in *in forma pauperis.* Whether
he is in any better financial position now his affidavit does not
show. Under the circumstances disclosed by the affidavits as to
the failure to put in a defence, the application is one therefore
bearing exclusively on the rights of the parties *inter sese,* rather

than one where the court, by reason of the affidavits presented, has any duty with special reference to the protection of the public interests of the state, to see that the defendant should now have the option of setting up the defence even on the ground that the propriety of the decree has been made a matter of fair question. Defendant, on an application made under the present circumstances, can certainly have no right beyond that of a decision on his application, on the affidavits presented on both sides. On these affidavits, I conclude that defendant has failed to make out a defence to the charge of desertion made in the petition, or to show a case entitling him to open the decree in order to further contest it. His own affidavit admits that he left the home, and, as he then told his wife in the presence of her brother, because she would not consent to sell the home, title to which was in her name. She was not obliged to consent, and her refusal (for good reasons, if her affidavit is true) was no reason for deserting the home. He never afterwards provided, or offered to provide, any other home, or contributed anything to his wife's support, and she has been largely dependent on relatives, except during the time when she supported herself by taking boarders at the home until it was destroyed by fire.

The affidavits of the defendant, his wife and others, seem to establish that he was a speculator in stocks, that his financial difficulties during the marriage resulted from this, and that he owes the petitioner's relatives considerable sums. The wife's refusal to sell the home was, as she says, because, on the sale of a previous home, he lost the money in speculation, and he wanted the second home sold to get the money for the same purpose, which she refused to consent to.

After his desertion the husband made no effort to see his wife or to terminate the separation brought about by his wrongful act, nor does he claim to have made any such effort. The single meeting with his wife, after the separation, was at the house of her sister, and, so far as they were concerned, was not intentional. In his petition the defendant states that he has always been ready to live with her and provide for her "in keeping with his financial circumstances," but he has never since given, or offered to

give, her anything, and was not even able, as he says, to pay a lawyer a retaining fee to defend the suit. The amount asked for the retainer is not stated, but it probably was not large, and if this was his financial situation after two and a half years of separation, no weight can be given to this statement as an offer to provide a home or support.

The petition to open decree specified no defence other than a denial of the desertion, but the affidavits filed on petitioner's behalf contain statements intended to reflect on the conduct of the wife in receiving prolonged visits at her home from another man more than two years after the husband's desertion. These affidavits relate not to what the affiants themselves know or saw, but mainly to alleged admissions of the petitioner, and have been fully met by the counter affidavits, both as to the admissions themselves as well as the visits. No defence or counter-claim of adultery is made in the petition, and these statements have no relevancy merely as a defence to a charge of desertion, which was completed before they occurred. The denial of the desertion is the only defence set up in the petition filed June 21st, 1915, which alleges his continued readiness and willingness to live with his wife. In his own affidavit he admits that after the proceedings commenced, and he was served with process, he told petitioner's brother it would be impossible for him and his wife to live together, in view of the fact that the intimacy of petitioner with this other man had been started, and that petitioner had probably started proceedings to free herself. This admission would seem to justify a conclusion that this delayed defence has not been made in good faith, for the purpose or with the desire of establishing his innocence of the charge of desertion or to show his continued readiness and ability to restore the marriage relation and the home.

On examination and consideration of the whole record and the affidavits on this application, I conclude that the charge of desertion made in the petition, which was established by the proofs before the master, and his report thereon, has been further confirmed, and that considered as an application to be disposed of on the rights of the parties *inter sese,* the decree *nisi* thereon should not be opened.

And it appearing also to be a case where there was no question of any collusion, or of any imposition on the court, or any other reason why the court in its control over the proceedings should, in the public interest, direct or allow further inquiry or proofs as to defence, the application to open the decree *nisi* should be denied, with costs.